IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 17-0436

_____

FILED

**January 31, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

SELWYN VANDERPOOL, INDIVIDUALLY AND IN HIS CAPACITY AS
ADMINISTRATOR OF THE ESTATE OF LILA VANDERPOOL AND AS TRUSTEE
OF THE SELWYN VANDERPOOL AND LILA VANDERPOOL FAMILY
IRREVOCABLE LIVING TRUST, AND CORNERSTONE MARKETING, LLC, A
WEST VIRGINIA LIMITED LIABILITY COMPANY, JOSEPH W. BOSWELL, III,
MANAGER, AND JOSEPH W. BOSWELL, III, INDIVIDUALLY,
Plaintiffs Below, Petitioners,

v.

CPL. B.M. HUNT AND GREENBRIER COUNTY SHERIFF'S DEPARTMENT,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Greenbrier County
Honorable Jack Alsop, Judge
Civil Action No. 15-C-185

AFFIRMED

_____

Submitted: January 16, 2019
Filed: January 31, 2019

Barry L. Bruce, Esq.                                     Wendy E. Greve, Esq.
Barry L. Bruce and Associates, L.C.            Oscar R. Molina, Esq.
Lewisburg, West Virginia                            Pullin, Fowler, Flannigan
Attorney for Petitioners                                 Brown & Poe, PLLC
                                                               Charleston, West Virginia
                                                               Attorneys for Respondents


JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."  Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977).

2.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syl. Pt. 2, *State ex. rel McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

3.      "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed."  Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

4.      "A motion to vacate a judgment made pursuant to Rule 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion."  Syl. Pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

5. "Where the issue on an appeal from the circuit court is clearly a question of law . . . involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

6. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

7. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

8. "'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925)." Syl. Pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002).

9.    "Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938).

10.    "'That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' Syllabus point 14, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)." Syl. Pt. 4, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975).

11.    "'Whether a complaint states a claim upon which relief may be granted is to be determined solely from the provisions of such complaint[.]' Syl. pt. 3, in part, *Barker v. Traders Bank,* 152 W.Va. 774, 166 S.E.2d 331 (1969)." Syl. Pt. 2, *Par Mar v. City of Parkersburg*, 183 W.Va. 706, 398 S.E.2d 532 (1990).

12.    A county sheriff's department and its officers are a state entity for purposes of the Maxwell Governmental Access to Financial Records Act, West Virginia Code §§ 31A-2A-1 to -10.

13.    The Maxwell Governmental Access to Financial Records Act, West Virginia Code §§ 31A-2A-1 to -10, does not provide a civil cause of action for the negligent receipt of financial records by a state entity.  Consequently, a state entity that obtains a

iii

customer's financial records cannot be held civilly liable under the Act in the absence of a

negligent disclosure of those records to a third party.

**HUTCHISON, Justice:**

The petitioners and plaintiffs below, Selwyn Vanderpool,[1] Joseph Boswell,[2] and Cornerstone Marketing, LLC, appeal the February 10, 2017, and April 10, 2017, orders of the Circuit Court of Greenbrier County granting the motion to dismiss filed by the respondents and defendants below, Corporal B.M. Hunt and the Greenbrier County Sheriff's Department,[3] and denying the petitioners' "Motion for A Rehearing or New Hearing," respectively.[4] The petitioners filed this action pursuant to the Maxwell

---

[1]Mr. Vanderpool filed suit individually and in his capacity as Administrator of the Estate of Lila Vanderpool and as Trustee of the Selwyn Vanderpool and Lila Vanderpool Family Irrevocable Living Trust. Approximately three months after the orders on appeal were entered by the circuit court, Mr. Vanderpool passed away. Thereafter, the remaining plaintiffs filed motions in the circuit court seeking to substitute as plaintiffs Jerry Markham, the administratrix of the Estate of Selwyn Vanderpool, for Selwyn Vanderpool in his individual capacity, and Crystal Beyer, the newly appointed co-trustee of the Selwyn Vanderpool and Lila L. Vanderpool Family Irrevocable Living Trust, for Mr. Vanderpool in his capacity as Trustee. The motions were granted by the circuit court on October 30, 2017. Because this appeal was docketed prior to Mr. Vanderpool's death, the style of the case has not been modified to reflect the substituted plaintiffs. *See* W.Va. R. App. Proc. 41.

[2]Joseph Boswell filed suit individually and in his capacity as manager of Cornerstone Marketing, LLC.

[3]The February 10, 2017, order also denied the petitioners' motion for partial summary judgment.

[4]The petitioners also named Branch Banking & Trust ("BB&T") and Danita G. Moore, an agent for BB&T, as defendants in this matter. The petitioners' claims against BB&T and Ms. Moore are not at issue in this appeal. When this appeal was filed, the petitioners' claims against BB&T and Ms. Moore remained pending below; however, during oral argument, the petitioners' counsel stated that those claims have now been settled.

1

Governmental Access to Financial Records Act, West Virginia Code §§ 31A-2A-1 to -10 ("Act"), alleging that the respondents were negligent in obtaining and serving a subpoena on Branch Banking & Trust ("BB&T") without giving notice to them, which resulted in the wrongful disclosure of their confidential financial information.

In this appeal, the petitioners assert that the circuit court erred in finding that they have no cause of action against the respondents under the Act. While maintaining that the circuit court properly dismissed the claims against them, the respondents also set forth two cross-assignments of error,[5] arguing that the circuit court erred in failing to find them immune from the petitioners' claims pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29A-12A-1 to -18, and asserting that Mr. Vanderpool's claims fail as they did not survive his death.[6] Having considered the parties' briefs and oral arguments, the submitted appendix record, and pertinent authorities, we affirm the circuit court's orders for the reasons set forth below.

## I. Facts and Procedural Background

On November 5, 2015, the petitioners filed their complaint instituting this action. They alleged that Corporal Hunt of the Greenbrier County Sheriff's Department initiated an elder abuse investigation in 2014 under the mistaken belief that Mr. Boswell

---

[5]*See* W.Va. R. App. Proc. 10(c)(10)(f) (providing for cross assignments of error by respondents).

[6]*See* note 1, *supra*.

2

was taking financial advantage of Mr. Vanderpool. According to the complaint, Mr. Vanderpool's wife, Lila, granted him her power of attorney on September 13, 2013, while she was a resident of Brier Rehabilitation and Nursing Center.[7] On or about January 7, 2014, Mr. Vanderpool deposited a check payable to his wife in the amount of $121,646.20 from Sun Life Financial into her checking account with BB&T in Lewisburg, West Virginia. On January 9, 2014, using his power of attorney, Mr. Vanderpool wrote a check from his wife's checking account for the same amount as he had deposited two days earlier, making it payable to Cornerstone Marketing, LLC. That same day, the check was deposited by Mr. Boswell into Cornerstone's checking account at the BB&T branch in Roncerverte, West Virginia.[8]

On January 31, 2014, the Selwyn Vanderpool and Lila Vanderpool Family Irrevocable Trust was formed, and a Vanderpool Trust Account was opened at City National Bank in Lewisburg. That same day, Mr. Boswell obtained a cashier's check from BB&T in the amount of $93,500.00, which was the balance of the Vanderpool funds previously deposited into Cornerstone's account. Mr. Boswell gave the cashier's check to Mr. Vanderpool who deposited it into the Vanderpool Trust Account. According to the

---

[7]Mrs. Vanderpool passed away on February 20, 2014.

[8]The complaint does not set forth the nature of the relationship between the Vanderpools, Mr. Boswell, and Cornerstone Marketing.

3

petitioners, BB&T stopped payment on the check on February 5, 2014, without prior notice and without providing any reason for doing so.[9]

It appears that sometime during the course of the above transactions, Corporal Hunt began his investigation and sought assistance from the Greenbrier County Prosecutor's Office to obtain the banking records of Mr. Vanderpool, Mrs. Vanderpool, Mr. Boswell, Cornerstone Marketing, and Ridgeview Properties, LLC.[10] Pursuant to Corporal Hunt's request, an order was issued by Greenbrier County Circuit Judge J. C. Pomponio, Jr., directing the circuit clerk to issue a subpoena duces tecum to Corporal Hunt so he could obtain the BB&T bank records. Corporal Hunt then served the subpoena on BB&T and its agent, Danita Moore. No notice of the subpoena was given to any of the individuals or entities whose financial records were being sought.

The complaint alleged that by not providing notice to the petitioners that their bank records had been subpoenaed,[11] Corporal Hunt negligently violated the Act.[12] A

---

[9]The complaint states that "Vanderpool's plan was to have the Vanderpool Trust loan Boswell the $93,500 at 6% interest per year, and Boswell was in agreement to said terms."

[10]While Ridgeview Properties is mentioned in the complaint, no explanation of how that entity was involved in this matter has been provided, nor is it a named party in this action.

[11]The relevant language of the Act is set forth in the discussion section, *infra*.

[12]The complaint also alleged that BB&T and Ms. Moore had negligently disclosed the petitioners' financial records in violation of the Act. The complaint further asserted

4

motion to dismiss the complaint was filed by the respondents on October 11, 2016. The respondents asserted that there is no cause of action against a law enforcement officer of a political subdivision under the Act for negligently failing to provide notice to a "customer"[13] whose financial records are being sought pursuant to a subpoena. In addition, respondents asserted immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act.[14]

Following oral argument on the motions on December 15, 2016, the circuit court granted the respondents' motion to dismiss.[15] The order was entered on February 10, 2017. Subsequently, the petitioners filed a "Motion for a Rehearing or a New Hearing" that was denied by the order entered on April 10, 2017. This appeal followed.

---

additional causes of action against BB&T and Ms. Moore. However, as noted previously, the petitioners' claims against BB&T and Ms. Moore are not at issue in this appeal and have now been settled.

[13]The Act defines "customer" as "any person or his or her duly authorized representative who has transacted business with or has used the services of a financial institution or for whom a financial institution has acted as a fiduciary in relation to an account maintained in such person's name[.]" W.Va. Code § 31A-2A-1(a) (2009).

[14]*See* W.Va. Code §§ 29-12A-1 to -18.

[15]The court also denied the petitioners' motion for partial summary judgment.

## II. Standard of Review

The petitioners appeal the circuit court's order dismissing their complaint for failure to state a claim against the respondents upon which relief can be granted.[16]  We have held that "'[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."  Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977).  In other words, "[d]ismissal for failure to state a claim is proper 'where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Murphy v. Smallridge*, 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.E.2d 59, 65 (1984)).  It is well established that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syl. Pt. 2, *State ex. rel McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

The petitioners also appeal the circuit court's "Order Denying Motion for Rehearing or New Hearing."  The petitioners' motion was filed pursuant to Rules 59(a) and (b) and 60(b) of the West Virginia Rules of Civil Procedure.  However, Rule 59(a) does not apply in these circumstances.  Addressing a similar motion filed in *Malone v.*

---

[16]*See* W.Va. R. Civ. Proc. 12(b)(6) (providing for dismissal of complaint for "failure to state a claim upon which relief can be granted").

6

*Potomac Highlands Airport Auth.*, 237 W.Va. 235, 238-39, 786 S.E.2d 594, 597-98 (2015), we explained:

> [S]ubsection (a) of Rule 59 is plainly inapplicable as it provides for relief from judgments which have been entered as a result of trial: "A *new* trial may be granted to all or any of the parties and on all or part of the issues (1) in an action which there has been a *trial by jury . . .* and (2) in an action *tried without a jury. . . .*" (emphasis added). Inasmuch as petitioner's "Motion for Reconsideration and Rehearing" was filed within ten days of the circuit court's order dismissing the action, in accord with our historical practice, the Court will treat this appeal as arising from the circuit court's denial of a motion filed pursuant to Rule 59(e), which provides for the alteration or amendment of a judgment.

Accordingly, we review this matter as an appeal from a motion filed pursuant to Rule 59(e).

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998). As set forth above, the underlying judgment was the granting of the respondents' motion to dismiss to which a *de novo* standard of review is employed. With regard to determining the merits of Rule 60(b) motions, circuit courts are afforded broad discretion. As set forth in syllabus point five of *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974),

> A motion to vacate a judgment made pursuant to Rule 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.

7

Finally, we apply the *de novo* standard of review to the questions of law encompassed in both the petitioners' and respondents' assignments of error. In that regard, this Court has long held: "Where the issue on an appeal from the circuit court is clearly a question of law . . . involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." With respect to the term *de novo*, we have observed it "means '[a]new; afresh; a second time.'" *Gastar Exploration Inc. v. Rine*, 239 W.Va. 792, 798, 806 S.E.2d 448, 454 (2017) (additional quotation and citation omitted). "We, therefore, give a new, complete and unqualified review to the parties' arguments and the record before the circuit court." *Id.*

### III. Discussion

Enacted in 1998, the Maxwell Governmental Access to Financial Records Act limits a state entity's access to certain records of financial institutions and provides for criminal and civil liability and penalties for violations thereof. In particular, West Virginia Code § 31A-2A-2 (1998) provides:

> (a) No state entity may have access to or obtain from a financial institution financial records of any customer except as set forth in section four [§31A-2A-4] of this article[17] or under the following circumstances:
> (1) The customer has executed a written authorization pursuant to section three [§ 31A-2A-3] of this article;
> (2) The financial records are disclosed in response to a judicial order, warrant, summons or subpoena issued by a court

---

[17]The additional exceptions set forth in West Virginia Code § 31A-2A-4 (1998) do not apply to this matter.

8

of competent jurisdiction or a valid administrative order or subpoena of a state entity expressly ordering or requiring the disclosure of financial records: Provided, That any subpoena issued pursuant to the provisions of this subsection shall comply with the provisions of section five [§31A-2A-5] of this article;

(3) The financial records are disclosed in response to a judicial order authorizing the appointment of the state entity or its agent: (A) As guardian of the customer or conservator of his or her property; or (B) as administrator or executor of the customer's estate;

(4) The financial records are disclosed: (A) Pursuant to a state or federal rule of civil or criminal procedure or any comparable rule of another court of competent jurisdiction; (B) in response to a subpoena issued in connection with any pending civil or criminal proceeding in which a state entity is a party; or (C) in response to interrogatories in aid of execution propounded by a state entity where it is a judgment creditor of the customer;

(5) The financial records are disclosed to law-enforcement officers pursuant to a grand jury or trial subpoena resulting from a criminal investigation which complies with the provisions of section six [§ 31A-2A-6] of this article; or

(6) As may be required or permitted by any other state or federal law.

(b) No state entity obtaining financial records pursuant to the provisions of this article and no person who obtains financial records from a state entity which obtained such financial records pursuant to the provisions of this article shall disclose such financial records: (i) To any other state entity unless such other state entity has authority or authorization to receive the financial record in accordance with the provisions of this article; or (ii) to any person unless such person has authority or authorization to receive the financial record: Provided, That nothing herein shall limit or prevent the disclosure of financial records which are otherwise public documents or matters of public record or the disclosure of financial records made to facilitate a lawful proceeding, investigation, examination or inspection by a state entity. Financial records obtained under this article by a state entity shall not be subject to disclosure under the provisions of article one [§§ 29B-1-1 et. seq.], chapter twenty-nine-b of this code.

In this case, the petitioners alleged that their financial records were wrongfully disclosed pursuant to West Virginia Code § 31A-2A-2(a)(2) because Corporal Hunt obtained a subpoena but failed to comply with the requirements of West Virginia Code § 31A-2A-5 (1998). That statute provides in relevant part:

> A financial institution may disclose or produce financial records to a state entity in compliance with a subpoena served upon it if the subpoena contains a certification that: (1) A copy of the subpoena has been served on the customer whose records are sought by the state entity seeking disclosure or production of the records at least ten days prior to the date on which disclosure or production is sought; or (2) that service on the customer has been waived for good cause by the circuit court of Kanawha County or other circuit court of competent jurisdiction.

W.Va. Code § 31A-2A-5(a). Based on the fact that they never received notice of the subpoena, the petitioners alleged in their complaint that the respondents negligently violated the Act by obtaining their financial records, and therefore, they are entitled to the damages afforded by West Virginia Code § 31A-2A-7(b) (1998).[18] That statute provides for civil liability and damages as follows:

> (b) Any customer whose financial records or the information contained therein has been negligently disclosed by a state entity or a financial institution in violation of this article may file an action in any circuit court of this state against the state entity or financial institution and, if the customer proves that the state entity or financial institution negligently disclosed the customer's financial records or the information contained therein, may recover from the state entity or financial institution an amount equal to the sum of:

---

[18]West Virginia Code § 31A-2A-10 (1998) states: "The remedies provided in this article are exclusive for any violations or alleged violations of this article."

(1) Up to one thousand dollars in civil damages, as penalty, without regard to the volume of records involved or lack of actual damages;

(2) Any actual damages sustained by the customer as a result of the disclosure; and

(3) The costs of the action, including reasonable attorney's fees, as may be allowed by the court.

W.Va. Code § 31A-2A-7(b).

In granting the respondents' motion to dismiss, the circuit court found "that W.Va. Code § 31A-2A-7(b) does not apply to [Corporal] Hunt, [or the] Greenbrier Sheriff's Department as they are not a state entity." In this appeal, the petitioners argue that Corporal Hunt and the Greenbrier County Sheriff's Department clearly fall within the definition of "state entity," which is set forth in West Virginia Code § 31A-2A-1. Under the Act, "'[s]tate entity' means any state or local governmental office, officer, department, division, bureau, board or commission, including the Legislature, and any other state or local government agency of West Virginia, its political subdivisions and any agent thereof[.]" W.Va. Code § 31A-2A-1(f).

Conversely, the respondents maintain that they do not come within the definition of "state entity" under the Act because the definition does not include "county governmental officials or employees." The respondents argue that if the Legislature intended to include county government officials or employees in the definition of "state entity" for the purpose of imposing civil liability under West Virginia Code § 31A-2A-7(b), it would have so specified as it did in West Virginia Code § 31A-2A-7(a).

11

Prescribing criminal penalties for violations of the Act, West Virginia Code § 31A-2A-7(a) provides:

> Any state*, county* or local *government official or employee* who knowingly and willfully discloses financial records with intent to violate this article, or who knowingly and willfully induces or attempts to induce an officer, employee, agent or director of a financial institution to disclose financial records to a state entity with intent to violate this article, is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than one thousand dollars.

(Emphasis added).

In interpreting a statute, our rules of statutory construction first require us to "ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, in part, *Vest v. Cobb*, 138 W.Va 660, 76 S.E.2d 885 (1953). Thus, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959). It is also this Court's duty to "review the act or statute in its entirety to ascertain legislative intent properly." Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975). In other words "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *See also* Syl. Pt. 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958)

12

("Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.").

Importantly, a statute should not be construed in such a manner as to reach an absurd result. As this Court has long held,

> "[i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

Syl. Pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002). Consequently, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938). To that end, "'[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' Syllabus point 14, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)." Syl. Pt. 4, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975).

Applying our rules of statutory construction, we find that the respondents clearly fall with the definition of "state entity" as set forth in the Act. West Virginia Code § 31A-2A-1 expressly includes any "local governmental office, officer [or] department"

within the definition of "state entity." Counties are obviously units of local government in our state. To exclude county government officials or employees, like the respondents, from the definition of "state entity" would require us to assume that the phrase "local governmental office, officer, [or] department" would only apply to other forms of local government such as towns and cities. The statute simply does not make a distinction between the various forms of local government. Furthermore, the definition of "state entity" as set forth in the Act specifically includes "political subdivisions" of the state. It is well established under other statutory provisions that political subdivisions include county commissions, which employ the county sheriffs and their officers,[19] as well as other instrumentalities that perform local government functions. *See, e.g.*, W.Va. Code § 29-12A-3(c) (1986) (defining "[p]olitical subdivision" to include "any county commission" . . . [and] any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns[.]"); W.Va. Code § 16-5V-2 (2016) ("'Political subdivision' means a county, city or town in the state[.]"); W.Va. Code § 17-1-19 (1925) ("'Political subdivision' shall mean and include any county, city, town or other similar governmental unit of the State.").

Finally, under the respondents' interpretation of the definition of "state entity," a state or city police officer conducting the same investigation and seeking the same financial records would be subject to the penalty provisions of the Act but a county

[19] *See* Syl. Pt. 2, in part, *Beckley v. Crabtree*, 189 W.Va. 94, 428 S.E.2d 317 (1993) ("A sheriff is an employee of a political subdivision, the county commission[.]")

14

police officer would not. Such parsing of the statutory language achieves an absurd result that is simply not permitted under our rules of statutory construction. Accordingly, we now hold that a county sheriff's department and its officers are a state entity for purposes of the Act.

Although we have found that the respondents are a "state entity" under the Act, our analysis does not end there. "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965). Therefore, we now consider whether dismissal of the petitioners' complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure was warranted.

"The purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* is to test the sufficiency of the complaint." *Cantley v. Lincoln Co. Comm'n*, 221 W.Va. 468, 470, 655 S.E.2d 490, 492 (2007). It has long been established that "'[w]hether a complaint states a claim upon which relief may be granted is to be determined solely from the provisions of such complaint[.]' Syl. pt. 3, in part, *Barker v. Traders Bank,* 152 W.Va. 774, 166 S.E.2d 331 (1969)." Syl. Pt. 2, *Par Mar v. City of Parkersburg*, 183 W.Va. 706, 398 S.E.2d 532 (1990). "[T]he complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978).

15

As noted above, the respondents' liability and the petitioners' damages for an alleged violation of the Act are limited by West Virginia Code § 31A-2A-7(b), which sets forth the civil penalties.[20] Critically, the statute only provides for the recovery of civil penalties against a state entity when a customer's "financial records or the information contained therein has been *negligently disclosed.*" W.Va. Code § 31A-2A-7(b) (emphasis added). The Act does not provide a civil cause of action for the negligent receipt of financial records by a state entity. Consequently, a state entity that obtains a customer's financial records cannot be held civilly liable under the Act in the absence of a negligent disclosure of those records to a third party.

Upon review of the complaint, we find no assertion that the respondent officer or the respondent sheriff's department negligently disclosed the petitioners' financial records to anyone. Rather, the petitioners simply alleged in the complaint that respondent "Hunt knowingly, willfully and negligently *induced*" BB&T to disclose the subject records. Because West Virginia Code § 31A-2A-7(b) does not provide for civil liability when a state entity "induces" a financial institution to disclose financial records or information contained therein, the petitioners have no claim against the respondents under the Act. Even when the petitioners' allegations are taken as true, their complaint fails to allege a violation of the Act by the respondents that gives rise to a claim upon which relief can be granted. Therefore, the circuit court did not err in dismissing the complaint against

---

[20]*See* note 18, *supra*.

16

the respondents pursuant to Rule of Civil Procedure 12(b)(6) and in denying the petitioners' motion for a rehearing.[21]

## IV. Conclusion

Accordingly, for the foregoing reasons, the orders of the Circuit Court of Greenbrier County entered on February 10, 2017, and April 10, 2017, are affirmed.

Affirmed.

---

[21]The respondents also argued that notice requirements set forth in West Virginia Code § 31A-2A-5(a) did not apply in this case because the subpoena was issued "in connection with [a] pending . . . criminal proceeding" as provided in W.Va. Code § 31A-2A-3(a)(4)(b), which is a separate disclosure exception. Unlike West Virginia Code § 31A-2A-2(a)(2), West Virginia Code § 31A-2A-2(a)(4)(b) does not require compliance with the notice requirements of West Virginia Code § 31A-2A-5(a) prior to the disclosure of the financial records. While the respondents' argument is persuasive, we need not reach that issue in light of our decision to affirm the circuit court's dismissal of the complaint based on all the above. Likewise, for the same reason, we need not address the respondents' cross-assignments of error.